# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CONNIE SANDERS, | : | Case No. 3:11-cv-292 |
| Plaintiff, | | District Judge Walter H. Rice |
| | : | Magistrate Judge Michael J. Newman |
| vs. | | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c). At issue is whether the Administrative Law Judge ("ALJ") erred in finding that Plaintiff Connie Sanders ("Plaintiff") was "not disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").

This case is before the Court upon Plaintiff's Statement of Errors (doc. 7), the Commissioner's Memorandum in Opposition (doc. 10), Plaintiff's Reply (doc. 11), and the administrative record (doc. 6).

## I. BACKGROUND

### A. Procedural History

Plaintiff filed her DIB and SSI applications on May 31, 2007 asserting that she has been under a "disability" since October 1, 2006. Doc. 6-5 at PageID 167-73. Plaintiff claims disability due to panic attacks, bipolar disorder and depression. Doc. 6-6 at PageID 222.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Following initial administrative denials of her applications, Plaintiff received a video hearing before ALJ Janice Bruning on April 20, 2010. Doc. 6-2 at PageID 81-103. In June 2010, ALJ Bruning issued a written decision, concluding that Plaintiff was "not disabled." *Id.* at PageID 67-75. Specifically, the ALJ's "Findings of Fact and Conclusions of Law," which represent the rationale of her decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since October 1, 2006, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: bipolar/anxiety disorder and a history of alcohol dependence (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform a full range of work at all exertional levels but with the following non-exertional limitations: involving simple, repetitive unskilled 4-step tasks with occasional contact with the public, co-workers, and supervisors.

6. The claimant is capable of performing past relevant work as an assembly worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2006, through the date of this decision (20 CFR 202.1520(f) and 416.920(f)).

*Id.* at PageID 69-74 (brackets added).

On June 23, 2011, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. *Id.* at PageID 53-55; *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then timely filed this appeal on August 19, 2011. Doc. 2.

**B. Administrative Hearing**

At the administrative hearing, Plaintiff testified that she has panic attacks (*i.e.,* she becomes sweaty and dizzy) approximately once a week, and they generally last thirty minutes until her medication calms her down. *Id.* at PageID 89-90. She further testified that she has memory loss and difficulty concentrating. *See id.* at PageID 90. Plaintiff also reported that she has "crying spells" once or twice per week, and experiences paranoia.[2] *Id.*

A Vocational Expert ("VE"), Glee Ann L. Kehr, also testified at the hearing. The VE advised that, based on Plaintiff's age, education, work experience and RFC, she could perform her past relevant work as an assembly worker, and there were approximately 19,100 of those positions available in Ohio. *Id.* at PageID 101. The VE advised Plaintiff could additionally perform the following jobs in Ohio: a machine feeder (approximately 7,200 positions); a mail clerk (approximately 5,500 positions); and a packager (approximately 19,000 positions). *Id.*

## II. APPLICABLE LAW

The Court's inquiry on appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g), 1383(c)(3); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v.*

---

[2] Plaintiff also alleged physical limitations at the hearing. *See* doc. 6-2 at PageID 89-96. However, this testimony is not relevant for purposes of this appeal because Plaintiff only challenges the ALJ's findings regarding her mental limitations. *See* doc. 7 at PageID 594-600.

3

*Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

4

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. ANALYSIS

As a preliminary note, Plaintiff's pertinent medical findings and opinions have been adequately summarized in the parties' briefs, *see* doc. 7 at PageID 583-93; doc. 10 at PageID 606-09, and the Court will not repeat them here.

Plaintiff argues that the ALJ failed to give proper weight to the medical opinions of her treating psychiatrist, Susan Songer, M.D., and treating physician, Julie Myers, D.O. Doc. 7 at PageID 594-99. For the reasons that follow, the Court finds her argument unpersuasive.

**A. Deference Accorded to Treating Sources**

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards. In general, the opinions of treating physicians (and treating psychiatrists) are entitled to controlling weight. *Cruse v. Comm'r of Soc. Sec.*, 502 F. 3d 532, 540

5

(6th Cir. 2007). Under the "treating physician rule," the ALJ is required to "generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because: 'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)).

Nevertheless, a treating physician's statement -- that a claimant is disabled -- is not determinative of the ultimate issue. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is only to be given controlling weight if it is well-supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Id.*; *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). Thus, the ALJ may properly reject a treating physician's opinion that does not meet these standards. *See* 20 C.F.R. § 404.1527(d)(2).

If the opinion of a treating source is not accorded controlling weight, the ALJ must apply certain factors -- including the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; supportability of the opinion; consistency of the opinion with the record as a whole; and the specialization of the treating source -- in determining the level of weight to give the opinion. *Wilson*, 378 F. 3d at 544.

B. **The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Doctors**

Susan Songer, M.D. was Plaintiff's psychiatrist during the alleged disability period; the record contains her treatment records from October 2006 through January 2010. *See* doc. 6-7 at

PageID 298-308, 354-57, 376-85, 476-79; doc. 6-8 at PageID 481-82, 487-97, 518-24, 527-31, 538-40. During this time, Dr. Songer completed several Mental Functional Capacity Assessment forms. *See* doc. 6-7 at PageID 331-32, 476-79, doc. 6-8 at PageID 518-19. On each form, she reported that, although Plaintiff had "moderate" mental functional limitations in many categories, she did not have any "marked" limitations.[3] *See id.* Dr. Songer further noted that Plaintiff has a "moderate level of anxiety"; "excessive worrying"; "some decreased energy and sleep disturbance"; "some problems concentrating"; and "some depression." *See id.* Despite these findings (indicating that Plaintiff's mental impairments were moderate), Dr. Songer nonetheless advised that Plaintiff was "unemployable."[4] *Id.*

Julie Myers, D.O., an internal medicine specialist, has been Plaintiff's primary care physician since February 2000 and during the alleged disability period. *See* doc. 6-7 at PageID 438. The record contains medical records from Dr. Myers' office from May 2006 through September 2009. *See id.* at PageID 393-435; doc. 6-8 at PageID 498-505. In August 2007, Dr. Myers completed a Basic Medical form reporting that Plaintiff had no physical functional limitations (*i.e.,* no restrictions on her capacity to stand/walk/sit, lift/carry or other postural functions). *Id.* at PageID 333-34. Rather, she advised that Plaintiff was disabled based on her bipolar and anxiety/panic attacks, and the side effects of her medication (sedation, dizziness, difficulty concentrating, and psychomotor retardation). *Id.* Additionally, in November 2008, Dr. Myers completed interrogatories regarding Plaintiff's impairments. *Id.* at PageID 438-47.

---

[3] "Moderate" functional limitations are not suggestive of a disability. *See Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011) (noting that "moderate" functional limitations are "non-disabling").
[4] However, on three forms (completed in March 2007, May 2008, and March 2009), Dr. Songer reported that Plaintiff's limitations were expected to last between nine and eleven months; while on one form (from August 2007), she expected her limitations to last twelve months or more. *See* doc. 6-7 at PageID 332, 477, 479; doc. 6-8 at PageID 519. This is significant because under Social Security regulations, a claimant's impairment(s) must last or be expected to last *at least twelve months* to constitute a disability. *See* 20 C.F.R. § 404.1505(a) (emphasis added).

7

She advised that Plaintiff did not have the capacity to perform twelve work-related activities on a sustained basis, including "be[ing] prompt and regular in attendance"; "respond[ing] appropriately to supervision, co-workers and customary work pressures"; "sustain[ing] attention and concentration on her work"; and "relat[ing] predictably in social situations." *Id.* Dr. Myers further opined that Plaintiff had "'marked' restrictions of activities of daily living"; "'marked' difficulties in maintaining social functioning", and "'marked' deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner." *Id.*

The ALJ did not reject the medical opinions of Drs. Songer and Myers, but in fact gave them "some weight": The ALJ restricted Plaintiff to work that involves "simple, repetitive unskilled 4-step tasks with occasional contact with the public, co-workers, and supervisors" to accommodate her functional limitations resulting from her psychological impairments. *See* doc. 6-2 at PageID 71-73. However, the ALJ declined to afford controlling or deferential weight to their ultimate conclusion that Plaintiff is "disabled" based on the following rationale:

> In terms of the claimant's alleged psychological impairments, it is noted that her treating psychiatrist continually opines that claimant has moderate limitations in her ability to engage in work-related activities (Exhibits 6F, 15F and 19F). Dr. Songer also notes that the claimant's symptoms are managed by her medications (Exhibit 8F/42 & 33).
>
> . . . .
>
> [S]ome weight is afforded to the opinion of the claimant's primary care physician, Dr. Myers (Exhibit 6F/3 & 4). The physician did not note any physical problems. Some weight is also afforded to the claimant's treating psychiatrist (Exhibit 6F/1 & 2). The psychiatrist [Dr. Songer] noted only moderate limitations in the claimant's ability to perform work-related activities, including interacting with others. Some weight is afforded the opinion of Dr. Myers (Exhibit 12F). It is noted that Dr. Myers is an internal medicine doctor and not a mental health specialist. Dr. Myers indicated that the claimant has some mental limitations in social functioning, contrary to the treating psychiatrist (Exhibit 6F). It is also noted that this physician opined that the claimant's condition had persisted for over 7 years, at the time of completing the form. She also expressed the opinion that the claimant was capable of following simple instructions.

*Id.* at PageID 72-73.

In the Court's view, the ALJ articulated good reasons that were supported by substantial evidence for declining to adopt the disability findings by Drs. Songer and Myers. Dr. Songer consistently reported that Plaintiff had no greater than "moderate" mental limitations in her ability to perform work-related tasks, yet concluded that Plaintiff is "unemployable." *See* doc. 6-7 at PageID 331-32, 476-79; doc. 6-8 at PageID 518-19. Thus, Dr. Songer's opinion was internally inconsistent – a proper basis for which to discredit a medical opinion. *See Ledford v. Astrue*, 311 F. App'x 746, 754 (6th Cir. 2008); *cf. Harlow v. Astrue*, No. 3:10-cv-242, 2011 U.S. Dist. LEXIS 72554, at *10–11, 2011 WL 2652357 (S.D. Ohio July 6, 2011) (noting that a doctor's opinion – that the claimant had moderate or moderately severe limitations in every functional category but concluding that the claimant was disabled – was internally inconsistent). Moreover, as the ALJ pointed out, Dr. Songer's conclusion – that Plaintiff is disabled – is inconsistent with her treatment notes indicating that Plaintiff's symptoms have been properly managed by medication. *See, e.g.,* doc. 6-7 at PageID 377, 379, 381, 482, 489.

The ALJ likewise provided good reasons for discrediting Dr. Myers' disability findings. The ALJ discounted her opinion on the grounds that she is not a mental health specialist, but an internal medicine doctor – a factor the ALJ should weigh when evaluating a medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) (listing "specialization" as a factor to consider in weighing a medical opinion). The ALJ further reasoned that Dr. Myers' disability determination conflicted with Dr. Songer's consistent findings that Plaintiff has only "moderate" mental limitations. *See supra*; 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) (listing "consistency" as a factor). Additionally, the ALJ suggested Dr. Myers' statement – that Plaintiff had been suffering from disabling conditions for more than seven years at the time of her report (*i.e.,* since 2000) –

9

was not supported by the record because her psychological disorders were not documented until 2006. *See* doc. 6-7 at PageID 304-05, 333.

Therefore, the Court finds the ALJ's determination – not to give the opinions of Drs. Songer and Myers controlling or deferential weight – is well-supported by substantial evidence, and her reasons for discrediting their opinions are adequately set forth in the decision. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003). Further, the functional limitations resulting from Plaintiff's mental impairments are adequately addressed by the ALJ's RFC assessment. Though Court might have viewed this case differently had it heard the evidence, the record supports the conclusion that the ALJ reasonably acted within her "zone of choice" given the evidence before her. *See Buxton*, 246 F.3d at 772. In such circumstances, the Court is required to affirm the ALJ's conclusion that Plaintiff is not disabled. *See id.*

## IV. RECOMMENDATION

For the foregoing reasons, the Court finds Plaintiff's assignment of error to be unavailing. The ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The ALJ's non-disability finding be found supported by substantial evidence, and **AFFIRMED**; and

2. This case be **CLOSED**.

August 13, 2012                                             s/Michael J. Newman
                                                            United States Magistrate Judge

# **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).